IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | |
|---|---|
| **BEEQB, LLC, a Florida corporation,**<br><br>**Plaintiff,**<br><br>v.<br><br>**BLOCKQUARRY CORP. f/k/a ISW HOLDINGS, INC., a Nevada Corporation, and PANTHEON RESOURCES, INC.,**<br><br>**Defendant.** | Case No. _____<br><br>**COMPLAINT FOR CONVERSION, NEGLIGENCE, AND BREACH OF CONTRACT**<br><br>**Jury Trial Demanded** |

## NATURE OF ACTION

1. This action concerns an opportunistic bailee which has made off with property belonging to the Plaintiff and others.

2. Defendant Blockquarry Corp. has committed civil theft of Plaintiff's property by appointing itself bailee of that property, and then refusing to return it unless a series of escalating conditions or payments were met and made.

3. Acting in concert with Blockquarry Corp., Defendant Pantheon Resources, Inc. ("Pantheon") has enabled that civil theft, culminating in Pantheon's demand for almost $400,000 in order to return Plaintiff's own property.

4. As set forth below, Blockquarry should be compelled to return Plaintiff's property immediately, and pay damages proximately caused by its conversion.

5. Plaintiff Beeqb, Inc. ("Plaintiff" or "Beeqb") is a company engaged in the cryptocurrency mining industry.

6. Defendant Blockquarry Corp. f/k/a ISW Holdings, Inc. ("Defendant" or "Blockquarry") is a cryptocurrency mining development company that contracts for real estate, utility services, and housing for cryptocurrency mining servers.

7. Defendant Pantheon is a company which purports to secure and develop land for data processing centers related to the development of artificial intelligence.

8. Blockquarry currently has wrongful possession, custody, and control of Beeqb's cryptocurrency mining machine computers ("Miners") and specially-built crypto mining containers for the Miners ("Containers") (collectively, the "Equipment"), despite Beeqb's multiple requests to Defendant Blockquarry to return the equipment.

9. Plaintiff Beeqb now brings this action to recover its Equipment from Defendant Blockquarry, and recover damages associated with Blockquarry's conversion thereof.

## PARTIES, JURISDICTION AND VENUE

10. Plaintiff Beeqb is a Florida limited liability company with its principal place of business located at 1830 South Ocean Drive, Hallandale Beach, Florida 33009.

11. Defendant Blockquarry is an active Nevada corporation with its principal place of business at 8300 FM 1960 West, Houston, Texas 77070. It was registered as a foreign corporation in South Carolina on February 15, 2022, under Entity ID No. 01197527, and was issued a Certificate of Authority to transact business in South Carolina. According to records of the South Carolina Secretary of State, the corporation's current status is "forfeited."

12. Defendant Pantheon is an active Delaware corporation with a principal place of business in New York, New York.

13. This Court has subject matter jurisdiction over the instant case because all parties are diverse, including each plaintiff as to each defendant, and the amount in controversy exceeds $75,000.00. *See* 28 U.S.C.A. § 1332.

14. This Court has personal jurisdiction over Defendants because Defendants regularly conduct business in South Carolina by, among other ways, contracting with entities for various performances due in the State of South Carolina.

15. Venue is proper in this court because a substantial part of the events or omissions giving rise to the instant claim occurred in Cherokee County, South Carolina. *See* 28 U.S.C.A. § 1391(b)(2).

## LOCATION OF THE PROPERTY

16. Beeqb is currently unaware of the location of the Equipment. Upon information and

belief, Blockquarry engaged a third party to move the Equipment to the state of Missouri and host it there. Blockquarry counsel has suggested that Beeqb and other entities similarly situated may visit a facility in Missouri at some date in the future. However, because of the delay described below, which has caused Beeqb significant financial harm, the appropriate remedy is not a visit – it is the return of Beeqb's property and the payment of damages.

### DESCRIPTION AND VALUE OF THE PROPERTY

17. As of the date of filing, Defendant Blockquarry has 456 of Beeqb's cryptocurrency Miners that were at a facility operated by Uptime Hosting LLC ("Uptime Hosting") in South Carolina. The Miners have an estimated combined value of at least $3,970,294. In addition to the cryptocurrency Miners, Defendant Blockquarry has five of Beeqb's Containers with a combined value of at least $875,000.

### FACTS

**I.  BEEQB'S BUSINESS**

18. Beeqb was formed in Florida in 2018 by Maxim Eliseev ("Eliseev"), its owner.

19. Beeqb is actively involved in the cryptocurrency mining industry, which utilizes specialized and powerful Bitcoin mining machine computers. Beeqb is reliant on the sustained use of more than 1,300 of its Application-Specific Integrated Circuit Miner machines, also known as Miners. The continued operation of the Miners is critical for Beeqb's business.

**II.  BEEQB'S HOSTING AND PURCHASE AGREEMENTS WITH UPTIME HOSTING**

20. In the summer of 2021, Beeqb's representatives, including Eliseev, became aware of the Bit5ive group of companies, particularly Uptime Hosting, Uptime Armory LLC ("Uptime Armory"), Bit5ive LLC, and Bit5ive International LLC.

21. On October 1, 2021, Beeqb and Uptime Hosting entered into a Hosting Agreement, under which Beeqb and Uptime Hosting had clearly defined roles and responsibilities. A copy of the Hosting Agreement is attached as **Exhibit A**.

22. To operate efficiently, the Miners need to be hosted in a secure facility with

adequate power. Two hosting facilities were provided pursuant to the Hosting Agreement, one located at 4038 Rocket Street, Pryor, Oklahoma 74361, (the "Oklahoma Facility"), and the other at 150 Hyatt Street, Gaffney, South Carolina 29341 (the "Gaffney Facility").

23. Under the terms of the Hosting Agreement, Beeqb agreed to supply the Miners and pay associated electricity and hosting fees. In return, Uptime Hosting was to provide electricity, space, and other services for these Miners. **Exhibit A** at 15 ¶ 1.1, 18 ¶ 2.1.[1]

24. On October 1, 2021, Beeqb and Uptime Armory also entered into a Sale and Purchase Agreement ("Purchase Agreement") under which Beeqb agreed to purchase five Containers. A copy of the Sale and Purchase Agreement is attached as **Exhibit B**. Beeqb subsequently paid Uptime Hosting $656,250 and $218,750 for the five Containers. *Id.* at 35–36, ¶¶ 2–3. These Containers were specifically built for Beeqb's Miners and Uptime Hosting's facilities. *Id.* at 51.

25. In accordance with the Purchase Agreement, between December 2021 and January 2023, Beeqb supplied Uptime Hosting with approximately 1,308 of its Miners and made all necessary payments, thus satisfying Beeqb's obligations under the Hosting Agreement. Beeqb shipped 456 of these Miners and five Containers to the Gaffney Facility.

26. The Hosting Agreement explicitly notes, "the [Containers] shall remain the property of [Beeqb] at all times." **Exhibit A** at 16 ¶ 1.3. Additionally, the Hosting Agreement states, "Upon [Beeqb's] request, and provided that [Beeqb] is current on all amounts due to [Uptime Hosting], [Uptime Hosting] shall return [Beeqb's] Equipment upon termination of the Agreement." **Exhibit A** at 20 ¶ 3.7. Further, section 2.1 states that, "[Uptime Hosting] does not own any [of the Equipment]." **Exhibit A** at 24 ¶ 2.1.

27. The section entitled, "Host Representations" in the Hosting Agreement stated that Uptime Hosting's performance of its obligations under the agreement would not require the consent of any third party. **Exhibit A** at 21 ¶ 5.1.

---

[1] The Hosting Agreement has multiple paragraphs with the same number, so references to paragraphs of the Hosting Agreement are to page number, then paragraph number.

28. While Beeqb upheld all its obligations under the Hosting and Purchase Agreements, Uptime Hosting breached the Hosting Agreement by: (1) failing to deliver the required amount of electricity to the Gaffney Facility; (2) failing to provide credits to Beeqb as a result of the breach; (3) refusing to return Beeqb's hosting deposit; and (4) refusing Beeqb's request to return Beeqb's equipment.

29. Since September 12, 2023, Beeqb has had an ongoing lawsuit against Uptime Hosting, Uptime Armory, Bit5ive LLC, and Robert Collazo in the 11th Judicial Circuit of Florida. *See BEEQB, LLC v. Uptime Hosting LLC*, No. 2023-022858-CA-01 (Fla. Cir. Ct. Sept. 12, 2023). A copy of the complaint is attached as **Exhibit C**.

30. Beeqb has been awaiting the release of its property from the Gaffney Facility since November 2022. The continued inactivity of this mining equipment is resulting in daily financial losses for Beeqb.

### III. BLOCKQUARRY UNLAWFULLY TAKES BEEQB'S EQUIPMENT AND REFUSES TO RETURN IT

31. Defendant Blockquarry had been engaged in a lawsuit against the owner of the Gaffney Facility, the Gaffney Board of Public Works ("the Board"), and Litchain Corp. since April 7, 2023, *Blockquarry Corp. v. Litchain Corp.*, No. 7:23-cv-01427 (D.S.C. Apr. 7, 2023) ("Litchain Litigation"). The dispute concerned Defendant Blockquarry's lease of the Gaffney Facility and the subsequent revocation of the lease. *Id.* A copy of the complaint is attached as **Exhibit D**. Throughout the Litchain Litigation, Defendant Blockquarry referred to itself as the "bailee" for the personal property at the Gaffney Facility which, if true, would confer upon Blockquarry the obligation to deliver the personal property to the person entitled to the property under a document of title.

32. Beeqb became aware of the Litchain Litigation, and proactively sent a demand letter dated April 21, 2023, informing the Board that Beeqb was entitled to retake possession of its Equipment. A copy of this demand letter is attached as **Exhibit E**. On April 24, 2023, the Board responded, and informed Beeqb that none of the equipment at the Gaffney Facility could be

distributed without the court's consent. A copy of the Board's response is attached as **Exhibit F**.

33. On November 2, 2023, Defendant Blockquarry and the Board filed a joint stipulation of dismissal with prejudice of all claims and crossclaims between them. A copy of the stipulation is attached as **Exhibit G**. However, Defendant Blockquarry's lawsuit against Litchain Corp. continued.

34. Beeqb is a beneficiary of the settlement agreement between Blockquarry and the Board because upon information and belief, the settlement agreement requires Blockquarry to return all property from the Gaffney Facility to its rightful owners.

35. On November 14, 2023, the Board informed Beeqb that the distribution of Beeqb's Equipment would be performed by Defendant Blockquarry. A copy of this email is attached as **Exhibit H**.

36. That same day, Beeqb sent an email to Blockquarry's counsel inquiring about plans to distribute Beeqb's Equipment and asking how Beeqb could help expedite the process. A copy of this email and subsequent exchanges with Blockquarry's counsel are attached as **Exhibit I;** the email from Beeqb's counsel is at 203–4. Blockquarry's counsel responded that all the equipment at the Gaffney Facility was being transferred to Blockquarry's new site. *Id.* at 203. However, the location of this site was not provided. Blockquarry then explained that after the equipment was transferred, Blockquarry would inventory and test the equipment and would update Beeqb after this inspection was completed. *Id.*

37. On November 16, 2023, Beeqb emailed Blockquarry's counsel and offered to reduce Blockquarry's costs by transferring Beeqb's Equipment from the Gaffney Facility as soon as possible, at Beeqb's expense. Blockquarry's counsel responded and said that it would pass Beeqb's information along to Blockquarry. *Id.* at 201–2.

38. Beeqb waited patiently for updates, however, over a month passed and Defendant still had not provided Beeqb with a timetable, responded to Beeqb's offers for assistance, or furnished any updates regarding the return of Beeqb's Equipment. On December 20, 2023, Beeqb sent a demand letter to Defendant Blockquarry informing it that Beeqb had waited long enough,

inventory should have been completed, and Blockquarry needed to return Beeqb's Equipment. A copy of this demand letter is attached as **Exhibit J**.

39. On January 12, 2024, Blockquarry filed its response to the Board's Motion for Partial Judgment in the Litchain Litigation. A copy of the response is attached as **Exhibit K**. In its response, Blockquarry stated, "It is undisputed Blockquarry was permitted to reenter the [Gaffney Site] and, on or about November 17, [2023,] it removed the [Equipment] with the authorization of the [Board]." *Id.* at 213. In the filing, Blockquarry also suggested that the publicly-filed inventories of the property were incorrect. *Id*.

40. Blockquarry did not respond to Beeqb's demand letter until January 24, 2024. A copy of Blockquarry's response is attached as **Exhibit L**. In Defendant's reply letter, it stated that it needed additional information from Beeqb before any of Beeqb's Equipment could be returned.

41. On February 5, 2024, Beeqb provided Defendant Blockquarry a spreadsheet containing the number of Miners, corresponding invoices, and customs information for both the Gaffney and Oklahoma Facilities, and even photos of the Miners being unpacked. A copy of the evidence sent to Blockquarry is attached as **Exhibit M**.

42. On February 12, 2024, Beeqb and Blockquarry held a joint meeting to discuss the return of Beeqb's Equipment (the "02/12/2024 Meeting"). At the meeting, Blockquarry acknowledged that Beeqb had replied swiftly to all its requests and had provided evidence regarding ownership of the Equipment. Defendant also stated it was satisfied the Miners belonged to Beeqb. Blockquarry asked Beeqb to provide additional information regarding Beeqb's electric consumption while the Equipment was at the Gaffney Facility. However, despite Beeqb's assurances that this information would be provided, Blockquarry refused to provide Beeqb a timetable showing when the Equipment would be released.

43. During the 02/12/2024 Meeting Beeqb discovered that Bit5ive sold all of Beeqb's Containers to Defendant Blockquarry to satisfy a debt Bit5ive owed.

44. Beeqb does not owe Defendant Blockquarry any payment for outstanding debt obligations, payments, or for anything else. Beeqb has never entered into a contract with

Blockquarry.

45. On February 19, 2024, Beeqb provided Blockquarry a table containing the monthly electric consumption by Beeqb in the Gaffney Facility, with accompanying invoices. A copy of the cover email, table, and invoices are attached as **Exhibit N**.

46. On the same day, Beeqb received an email from Pantheon. A copy of the email, documents included with the email, and a subsequent email exchange are attached as **Exhibit O**. In the initial email, Pantheon attached documents showing it intended to take over a supposed "debt" obligation that Blockquarry alleged was owed by Beeqb. *Id.* at 265–66. The documents showed that Pantheon intended to purchase "debt that is owed to BlockQuarry from BEEQB LLC, in exchange for services rendered relating to the move of BlockQuarry's assets and equipment from Gaffney, South Carolina to Missouri." *Id.* at 267. Pantheon suggested it might take control of Beeqb's Equipment and use it to mine Bitcoin until the alleged debt was satisfied, and perhaps beyond, as part an agreement that resembled a settlement. *Id.* at 270. Beeqb informed Pantheon that Beeqb was not interested in a settlement and might have to resort to litigation to retrieve the Equipment. *Id.* at 265. Pantheon's representative replied, "We'll be standing by to assist you. I consider mining without a hosting agreement to be in poor faith. We will evaluate our legal options as well." *Id*.

47. Pantheon's email and attachments showed that Blockquarry had held itself out to Pantheon as the owner of Beeqb's Equipment. It also shows that Pantheon intended to use Beeqb's property without authorization.

48. Concerned that its Equipment was being misused or improperly stored, on March 15, 2024, Beeqb emailed Blockquarry requesting permission for an agent or principal to inspect Beeqb's Miners and Containers at Blockquarry's storage facility. A copy of the email is attached as **Exhibit P**. Blockquarry's counsel never responded to this email. Beeqb emailed Blockquarry again on March 17, 2024, and received no reply. *Id.* Beeqb only learned that Blockquarry's attorneys had withdrawn on April 9, 2024, when they checked the docket for the Litchain Litigation on PACER.

49. Despite Beeqb consistently furnishing requested evidence, Blockquarry and Pantheon imposed escalating conditions on the recovery process. Instead of allowing Beeqb to retrieve its Equipment, Defendant Blockquarry wrongfully retained the equipment at an undisclosed location and even sold it to Pantheon.

50. Defendants have therefore taken the position that the Equipment does not belong to Beeqb – a plain falsehood. Despite extensive discussions in good faith and over six months passing since Beeqb's initial email to Blockquarry, Defendants have committed to their theft and refuse to provide a timetable for the return of Beeqb's equipment or even disclose the Equipment's specific location.

51. Beeqb therefore decided to intervene in the Litchain Litigation to recover its Equipment. Two similarly situated entities, named Bitmain[2] and CryptoInfiniti, had already done so. Beeqb sought to join Bitmain and CryptoInfiniti (collectively, the "Intervenors") to achieve a speedy disposition of all Miners and Containers held by Blockquarry or Pantheon.

52. As Beeqb's counsel was preparing intervention papers, Blockquarry and the Board came to an agreement to settle all outstanding claims in the Litchain Litigation. The Court dismissed all pending interventions and closed the case. **Exhibit G.**

53. On May 1, 2024, counsel for Blockquarry organized a "summit" for the Intervenors in the Litchain Litigation. Counsel for Blockquarry, Beeqb, Bitmain, and CryptoInfiniti attended in person or virtually. Blockquarry counsel suggested that the three Intervenors could send representatives to an unidentified facility in Missouri to inspect their Equipment and tally which items belonged to each entity.

54. Blockquarry counsel is new to the case, having replaced prior counsel which was conflicted out of representing Blockquarry. A copy of Blockquarry's prior counsel's withdrawal is attached as **Exhibit Q**.

55. Blockquarry's new counsel expressed a lack of confidence that each of the

---

[2] Bitmain is also referred to "Bitman" at certain points on the Litchain Litigation docket.

Intervenors' equipment was present at the facility in Missouri. Blockquarry's counsel suggested that the Intervenors arrange a visit to the site in Missouri to determine whether the property was even fully accounted for.

56. Beeqb will send a representative to Missouri when invited to do so. An invitation has not yet been extended.

57. In the meantime, Blockquarry's continued delay and negligence as a bailee continues to cost Beeqb significant sums of money. With every day the Equipment remains under Blockquarry or Pantheon's control, Beeqb is unable to achieve the benefit of the bargain it expected when it purchased the Equipment.

58. Upon information and belief, Pantheon is using the Equipment for its own benefit, accruing significant financial gain to itself while ignoring Beeqb's plain ownership.

59. Beeqb cannot wait any longer for Defendants to release property they do not own, and therefore brings this action.

## COUNT I

**Negligence and Gross Negligence of Bailee: As to Defendant Blockquarry**

60. Plaintiff incorporates by reference the allegations in the paragraphs set forth above.

61. In the Litchain Litigation, Blockquarry held itself out as bailee of the Equipment.

62. Beyond its allegations in parallel litigation, Blockquarry was, in fact, a bailee of the Equipment in that it received delivery of the personal property of Beeqb in trust for a specific purpose pursuant to an express or implied contract to fulfill that trust.

63. Blockquarry therefore owed a duty of care to Beeqb, the bailor of the Equipment.

64. Blockquarry has breached that duty by retaining possession of the Equipment long past any point of reason.

65. As a natural consequence and proximate result of Blockquarry's negligence, Beeqb has suffered foreseeable harm including, but not limited to, the Equipment itself and the income expected from the operation of the Equipment.

**COMPLAINT**

66. Blockquarry's misconduct rose to the level of gross negligence, willful, and wanton misconduct.

67. Beeqb is entitled not only to the return of its equipment, but damages associated with Blockquarry's negligence, in an amount to be determined at trial. An award of punitive damage should be assessed against Blockquarry in an amount sufficient to impress upon it the seriousness of its misconduct.

## COUNT III

### Breach of Contract: As to Defendant Blockquarry

68. Plaintiff incorporates by reference the allegations in the paragraphs set forth above.

69. On or about November 2, 2023, Blockquarry and the Board entered into an agreement (the "Settlement Agreement") regarding claims in the Litchain Litigation.

70. The Settlement Agreement is a valid, binding contract supported by sufficient consideration among Blockquarry and the Board.

71. Upon information and belief, the Board performed in good faith its obligations under the Settlement Agreement.

72. Beeqb is a third-party beneficiary who may enforce the Settlement Agreement. Upon information and belief, the Settlement Agreement conferred a direct benefit upon Beeqb by requiring Blockquarry to return the Equipment to its rightful owners by December 19, 2023.

73. Blockquarry has breached the Settlement Agreement by not returning the Equipment to Beeqb.

74. As a direct and proximate result of Blockquarry's breach, Beeqb has been injured and is entitled to any such relief the Court deems just and appropriate.

## COUNT IIIII

### Conversion: As to Both Defendants

75. Plaintiff incorporates by reference the allegations in the paragraphs set forth above.

76. Blockquarry has deprived Beeqb of its right to use its own property.

77. To the extent Blockquarry's services as bailee in South Carolina were necessary, such need lapsed when Blockquarry and the Board entered the Settlement Agreement.

78. Blockquarry should have returned the Equipment to Beeqb immediately.

79. By instead taking or shipping Beeqb's Equipment to Missouri, Blockquarry has improperly taken property from Beeqb without due authority.

80. Pantheon conspired with Blockquarry to achieve this result.

81. Blockquarry's retention of the Equipment, and Pantheon's refusal to return it, constitute an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to Beeqb, to the alteration of the condition or the exclusion of Beeqb's rights.

82. Blockquarry and Pantheon's acts of conversion were willful, reckless, and/or committed with conscious indifference to the rights of Beeqb.

83. As a result of Blockquarry and Pantheon's conversion, Beeqb has suffered damages in an amount to be determined at trial. An award of punitive damages should also be assessed against Blockquarry and Pantheon to impress upon in the seriousness of its misconduct.

## COUNT IVV

### Restitution for Unjust Enrichment: As to Both Defendants

84. Plaintiff incorporates by reference the allegations in the paragraphs set forth above.

85. Defendants do not own Beeqb's Equipment.

86. Upon information and belief, Defendants have been using Beeqb's Equipment to mine Bitcoin.

87. By unlawfully taking control of and using Beeqb's Equipment, Defendants have seized a benefit from Plaintiff's property.

88. Defendants have realized significant value from that benefit.

89. It would be inequitable for Defendants to retain that benefit without paying Plaintiff for the benefit's value.

90.   Beeqb is therefore entitled to restitution of that benefit, otherwise, Defendants will have been unjustly enriched.

**WHEREFORE,** Plaintiff Beeqb demands: (1) an Order for the immediate delivery of its Equipment; (2) an Order prohibiting Defendant Blockquarry from concealing, damaging, or destroying the Equipment (including any future sales of the Equipment); (3) an Order awarding Beeqb permanent possession of the Equipment; (4) an Order awarding reasonable attorney fees to Beeqb; (5) an Order directing expedited discovery from Defendant Blockquarry and third parties to assist Beeqb in recovery of the Equipment; (6) damages associated with Blockquarry's negligence, conversion, and breach, in an amount to be determined at trial; and (7) any further relief that the Court deems just and equitable.

Date: May 23, 2024

**CHAPPELL, CHAPPELL & NEWMAN**

By:  /s/ *Graham L. Newman*
Graham L. Newman, Federal Bar No. 9746
4500 Fort Jackson Blvd., Suite 250
Columbia, South Carolina 29209
Tel: (803) 266-1553
graham@chappell.law

**BUZKO KRASNOV**
Evgeny Krasnov
evgeny.krasnov@buzko.legal
Tel: (718) 557-9582
Peter Bryce
peter.bryce@buzko.legal
Tel: (202) 509-1621
228 Park Avenue South
PMB 85451
New York, New York 10003
*Pro Hac Vice Motions forthcoming*

*Attorneys for Plaintiff, Beeqb, LLC*