# EXHIBIT K

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | |
|---|---|
| Blockquarry Corp. f/k/a ISW Holdings, Inc., <br><br> Plaintiff, <br><br> v. <br><br> Litchain Corp. and Gaffney Board of Public Works, <br><br> Defendants. <br><br> ─────────────────────── <br><br> Gaffney Board of Public Works, <br><br> Counter-/Cross-Claimant, <br><br> v. <br><br> Blockquarry Corp. f/k/a ISW Holdings, Inc., Counterclaim Defendant, and Litchain Corp., <br><br> Crossclaim-Defendant. | C/A No.: 7:23-cv-01427-TMC <br><br><br><br><br><br><br><br><br><br> **BLOCKQUARRY'S RESPONSE TO MOTION FOR PARTIAL DEFAULT JUDGMENT FILED BY GAFFNEY BOARD OF PUBLIC WORKS** |

Plaintiff Blockquarry Corp. f/k/a ISW Holdings, Inc. ("Blockquarry") timely responds to the motion for partial default judgment ("Motion") filed by Defendant and Counter-/Cross-Claimant Gaffney Board of Public Works (the "Utility") against Defendant/Crossclaim-Defendant Litchain Corp. ("Defendant") as follows.[1]

### INTRODUCTION

This lawsuit involves, among other things, Blockquarry and the Utility's (collectively, the "parties") pursuit of declaratory relief against Defendant. The parties seek declarations relative to

---

[1] This Court granted Blockquarry a seven-day extension to response to the Motion. (ECF No. 87.)

1) *certain purported agreements* that Defendant attempted, unlawfully, to make with the parties, 2) *$1.3 million in cash* that Blockquarry paid to the Utility for a deposit on electrical service ("Deposit"), and 3) *personal property* in the form of Bitcoin mining equipment previously maintained on the Utility's real property. Defendant defaulted, and the parties subsequently moved for default judgment, incorporating their proposed declarations. The Utility's Motion presently before the Court seeks a declaration that Defendant's purported agreements with the Utility are invalid and unenforceable and Defendant has no title to the personal property and the Deposit.

Blockquarry supports and does *not* oppose the Court granting the Utility's Motion, however, with a significant caveat. New information came to light that changes the facts upon which the parties operated under and, thus, demands an objection to certain language contained in the Motion (and the attached proposed order). Specifically, Blockquarry recently learned that exhibits attached to the Utility's affidavit in this case, which is referenced and relied upon *in the Utility's Motion and proposed order*, contains critical inaccuracies that require clarification. Second, Blockquarry recently learned the Utility picked winners and losers with respect to the personal property maintained on its premises, potentially in contradiction of this Court's text order admonishing the parties it would not tolerate waste of the property.

Therefore, Blockquarry requests the Motion be denied *without prejudice* for the parties to attempt to correct these errors and apparent anomalies. If the Court is inclined otherwise, Blockquarry requests, as alternative relief, that the Court's order omit all references to the affidavit at issue.

## BACKGROUND

### A. THE PLEADINGS

Blockquarry is a publicly traded Bitcoin mining developer. It is undisputed the company occupied and maintained a Bitcoin mining operation on real property owned by the Utility and located in Gaffney, South Carolina at address 150 Hyatt Street ("Premises"), and this was pursuant to a purported sublease made by Blockquarry and Defendant.

In this lawsuit, Blockquarry seeks a declaration that: 1) the purported sublease of the Premises was unlawful and unenforceable, 2) Blockquarry is entitled to return of the Deposit it paid to the Utility for electric service on the Premises, 3) Blockquarry was entitled to return of personal property maintained on the Premises for Bitcoin mining, and 4) Defendant's purported claims to the contrary were untruthful and unlawful. (*See, generally*, ECF No. 1.)

On April 10, 2023, Blockquarry filed a motion for temporary restraining order and preliminary injunction, attempting to enjoin the Utility from distributing the Deposit and the personal property to Defendant (or others). (ECF No. 7.) In a text order, this Court denied that motion without prejudice and stated:

> The court admonishes all litigants that any party that engages in spoliation of evidence or waste of the personal property at issue in this action, or otherwise dissipates such personal property, tangible or intangible, pending an order of this court does so at its own peril and the court reserves the right to sanction any such conduct.

(ECF. 9.)

Later, the Utility asserted its own claims for declaratory relief to resolve—what it deemed—competing claims to the Deposit and personal property on the Premises. (*See, generally*, ECF No. 15.)

B. **DEFENDANT'S DEFAULT AND THE UTILITY'S MOTION**

Defendant defaulted (ECF No. 59 and 76), and the Utility is present before the Court on its motion for default judgment against Defendant (ECF No. 84).

The Motion requests three declarations of fact: 1) Defendant is not the rightful recipient of the Deposit refund, 2) Defendant is not the rightful recipient of the cryptocurrency mining equipment and other personal property on the Premises, and 3) an agreement between Defendant and the Utility is void and unenforceable.

Blockquarry's *exclusive* opposition to the Motion relates to declaration two, as it relates to cryptocurrency mining equipment.[2]  It states:

> The Court DECLARES Crossclaim Defendant Litchain Corp. is not the rightful recipient of the cryptocurrency mining equipment and other personal property left at 150 Hyatt Street, Gaffney, South Carolina, **including the Bitcoin mining pods, the distribution transformers, data servers identified in Exhibit 3 of the Affidavit of Donnie L. Hardin (ECF Nos. 26-1 and 83-1)**, and other personal property not affixed to that property.

(Motion p. 13) (emphasis added).

Blockquarry opposes this declaration because it references an affidavit filed by the Utility that attaches exhibits with *incorrect* information.[3]  The incorrect information was provided to the Utility by third parties, and Blockquarry recently learned of its inaccuracy.  *See infra.*  Critically, by inference, this Court's declaration on this score could be deemed to *wrongly* identify personal

---

[2] Blockquarry maintains a factual dispute as to other declarations; however, they are mooted by the parties' dismissal. *See supra* § B.

[3] Additionally, the Utility knows personal property was *not* "left" on the Premises.  It is undisputed the Utility locked the Premises down, precluding Blockquarry from accessing its personal property (and necessitating this lawsuit).  *See infra.* This issue is mooted by the dismissal.

property on the Premises and its owner(s). This demands Blockquarry's instant objection to the second proposed declaration.

### C. THE HARDIN AFFIDAVIT AND THE PARTIES' DISMISSAL

On May 24, 2023, the Utility filed the affidavit of its general manager, Donnie L. Hardin. (ECF No. 26-1, "Hardin Affidavit".)[4] The Hardin Affidavit averred Blockquarry and three other entities claimed ownership of certain Bitcoin mining servers (commonly and hereinafter, "miners") purportedly present on the Premises. (Hardin Aff. ¶ 22.) Those claims were specified by Blockquarry and two nonparties, Bitmain and BEEQB, LLC, by attaching to the affidavit three inventories identifying serial numbers of every miner purportedly present on the Premises (collectively, "Inventories"). (Hardin Aff. ¶¶ 24, 27, 28.) The Hardin Affidavit further averred, "After the termination of the ground lease, Gaffney BPW padlocked the Premises to keep it secure. Upon information and belief, all supplies, equipment, and personal property present on the Premises at the time it was padlocked remain onsite." (Hardin Aff. ¶ 21.) New information discussed below shows the Premises was quite *un*secure and personal property was moved or removed without authorization from Blockquarry.

On November 2, 2023, Defendant and the Utility voluntarily dismissed their respective claims as to the other. (ECF No. 73.) It is undisputed Blockquarry was permitted to reenter the Premises, and, on or about November 17, it removed the Bitcoin mining equipment with the authorization of the Utility. Since, Blockquarry audited the equipment and discovered the Inventories attached to the Hardin Affidavit are incorrect. As discussed in this response,

---

[4] The Hardin Affidavit is hereinafter cited as 'Hardin Aff. ¶ [paragraph number]' or 'Hardin Aff. [page number].' The page number, here, refers the page number in the ECF embossed header.

Blockquarry is concerned this Court's order may reference the Hardin Affidavit and its false Inventories.

### D. NEW INFORMATION RELATIVE TO CONDITIONS ON THE PREMISES AND BITMAIN'S CLAIM TO MINERS

Blockquarry attaches to this response the declarations of Lawrence Davis, Beau Bartch, and Shawn Vaught as *Exhibits A, B, and C*, respectively (collectively, the "declarations").[5]  *Mr. Davis* is an Army veteran and 'chief operating officer' of Blockquarry; he is employed by Pantheon Resources, Inc. ("Pantheon").  (Davis Dec. ¶ 2.)  He averred Blockquarry retained Pantheon to relocate the Bitcoin mining equipment on the Premises and to inventory it.  (Davis Dec. ¶ 3.)  Pantheon contracted manpower and other expertise for the job.  (Davis Dec. ¶ 7.)  *Mr. Bartch* averred he is an Army veteran who is employed by a security company, and he reports to Mr. Davis in that capacity.  (Bartch Dec. ¶ 2.)  *Mr. Vaught* averred he was contracted to assist, and the Bitcoin mining equipment was relocated from the Premises to real property he owns in Missouri.  (Vaught Dec. ¶ 2.)

The declarations show 1) conditions on the Premises were unsecure, and the Bitcoin mining equipment was accessed and tampered with and 2) the Inventory provided by Bitmain to the Utility is incorrect.

### 1. Conditions on the Premises were unsecure, and the Bitcoin mining equipment was accessed and tampered with.

The declarations averred Blockquarry maintained on the Premises (20) forty-foot shipping containers with Bitcoin miners installed in them (collectively, "containers"), and that Messrs. Davis, Bartch, and Vaught were each present on the Premises at various times throughout October and November 2023—with the authorization of the Utility.  (*E.g.*, Davis Dec. ¶ 4.)

---

[5] The declarations maintain the same citation convention as discussed in fn. 4 *supra*.

Mr. Bartch averred he observed cloth laid over the razor wire that guarded the Premises' fence line and that a hole was present underneath the fence line—large enough for a person to access the interior of the Premises. (Bartch ¶¶ 5-6.) Mr. Bartch placed rocks in the hole, and, when he returned approximately two weeks later, the rocks were moved, allowing continued access to the Premises. (*Id*. ¶¶ 6, 8.) Mr. Bartch further averred he marked the containers in such a manner that he could determine whether they had been accessed, and, when he returned approximately two weeks later, the markings on containers numbered 2, 5, 6, 8, 10, 12, and 17 *no longer had the markers.* (*Id*. ¶ 7.) Finally, Mr. Bartch averred miners inside the containers were missing or moved. (*Id*. ¶ 8.) Mr. Bartch counted miners in the containers, and, when he returned approximately two weeks later, (1) miner was missing from *container number 2;* (10) miners were missing from *container number 5;* (1) additional miner was present in *container number 6;* and (10) additional miners were present in *container number 6.* (*Id*. ¶¶ 6, 9.) According to Mr. Bartch, "**These facts show someone was present on the Premises and *inside* containers numbered 2, 5, 6, and 10 without authorization, and strongly suggest someone was inside containers numbered 8, 12, and 17 without authorization.**" (*Id*. ¶ 10.)

Mr. Davis averred he was told by the Utility, directly, that it "**allowed various contractors onto the Premises, including Blockquarry's management contractor, and that these people removed personal property from the Premises, including a vehicle, copper wiring, spooled wire, and other equipment.**" (Davis Dec. ¶ 6.) The vehicle is believed to be a truck owned by Blockquarry's *former* management contractor. (*See, e.g.,* Bartch ¶ 5-6.) Notably, that contractor is subject to an ongoing lawsuit for return of Bitcoin mining equipment alleged to have been present *on the Premises*. *See BEEQB, LLC v. Uptime Hosting LLC*, 2023-022858-CA-01 (Fla. Cir. Ct. of Miami-Date County, Sept. 12, 2023) (hereinafter, the "BEEQB Lawsuit"). The BEEQB

Lawsuit is discussed further below. Blockquarry disputes BEEQB's allegation it owns miners formerly on the Premises.

### 2. The Inventory provided by Bitmain to the Utility is incorrect.

Mr. Vaught averred that, on behalf of Blockquarry, he presented on the Premises to assist with the relocation of the miners and he directed an inventory of the miners installed in the containers—while they were present in Missouri (sometimes, the "Blockquarry Inventory"). (Vaught ¶ 3, 6.) He states, **the "results of the Blockquarry Inventory reveal anomalies, including that the inventory attached to Hardin Affidavit as Exhibit l (purportedly Bitmain's miners . . . is incorrect."** (*Id.* ¶ 7.) Mr. Vaught attached to his declaration a document identifying serial numbers of miners that are *not* present in the containers, but that Bitmain identified as present on the Premises in the Bitmain Inventory. (*Id.*) The results show there are (310) miners identified in the Bitmain Inventory that were not in the containers after they were relocated by Blockquarry.

### E. OTHER RELEVANT INFORMATION RELATED TO BEEQB, LLC

As discussed above, the Hardin Affidavit further averred nonparty BEEQB, LLC ("BEEQB") made a claim to miners on the Premises and provided an inventory to the Utility, purporting to identify serial numbers for the same ("BEEQB Inventory"). (Hardin Aff. ¶ 27.) The Hardin Affidavit averred the BEEQB Inventory is attached to the inventory as Exhibit 2.

BEEQB's purported claim to miners on the Premises is consistent with its allegations in the BEEQB Lawsuit; however, Blockquarry's due diligence since reentering the Premises indicates otherwise. A copy of BEEQB's complaint is attached hereto as *Exhibit D*.[6] Blockquarry disputes the claim BEEQB owns or had miners on the Premises, for the following reasons.

---

[6] The BEEQB complaint is cited hereafter as 'BEEQB Compl. ¶ [paragraph]' or by reference to the red page number embossed in the footer.

*First*, Blockquarry is the *de facto* tenant on the Premises,[7] and Blockquarry has *no* oral or written agreements with BEEQB.[8]  *Second*, Blockquarry had no knowledge of BEEQB's purported presence on the Premises until after filing the instant lawsuit.  *Third*, in the BEEQB Lawsuit, BEEQB alleges it maintained a hosting agreement with Uptime Hosting, LLC ("Uptime Hosting")[9] for Bitcoin mining on the Premises—*and on a second site* located in Oklahoma. (BEEQB Compl. ¶ 24-25.)  Notably, however, the alleged hosting agreement identifies certain miners that were provided to Uptime Hosting, and those miners are identified as operating at 100 terahashes per second.  (BEEQB Compl. P. 24-25.)  On the other hand, nearly all the miners identified in the BEEQB Inventory are identified as operating at different rates—*e.g.*, 88, 92, 96, 100, 104, 134, and 141 terahashes per second.

In sum, it does not appear from BEEQB's own pleading that the BEEQB Inventory is correct or that BEEQB has any possessory claim to the associated miners, and Blockquarry requests this Court take judicial notice of the same.  *See, generally*, *United States v. Garcia*, 855 F.3d 615, 622 (4th Cir. 2017); *Colonial Penn Insurance v. Coil*, 887 F.2d 1236 (4th Cir. 1989) ("Pursuant to Fed.R.Evid. 201(b)(2), "[a] judicially noticed fact must be one not subject to reasonable dispute in that it is ... capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  We note that "[t]he most frequent use of judicial notice of ascertainable facts is in noticing the content of court records.")

---

[7] Blockquarry alleges it paid for the Utility's services on the Premises and Defendant's purported sublease was made, unknown to Blockquarry, without the Utility's consent.  (ECF No. 1 ¶¶ 38, 56.)

[8] The owner of miners typically enters a hosting agreement with the host site.

[9] On information and belief, Uptime Hosting is an affiliate of Bitmain's *formerly* contracted management company on the Premises.

In total, the facts described above show 1) conditions on the Premises were unsecure, and the Bitcoin mining equipment was accessed and tampered with; 2) the Inventory provided by Bitmain and BEEQB to the Utility are incorrect; and 3) nonparty claims to the miners on the Premises are spurious.

## ARGUMENT

The stakes in this case are high—on the facts and the law. Blockquarry was informed by representatives of Bitmain that the company conferred with the Cherokee County police regarding their claimed miners, and the relevant civil law on judgments is unforgiving in these circumstances. *See, generally, Moolenaar v. Government of the Virgin Islands*, 822 F.2d 1342, 1346 (3rd Cir. 1987) (holding that judgment based on incorrect facts did not constitute sufficient ground for setting aside judgment under Rule 60(b)(6).)

Further, it appears the Utility did not honor the spirit of the Court's April 12, 2023 text order warning that waste of the personal property on the Premises would be treated with a heavy hand. (*See* ECF No. 9.) By permitting access to the Premises and removal of property by some but not others, the Utility impermissible picked winners and losers. In any event, the containers were entered, and miners were taken or disturbed (Bartch Aff. ¶ 10.)—all while the Utility falsely claimed it kept the Premises under lock and key "to keep it secure" (Hardin Aff. ¶ 21). For these reasons, the Court should deny the Motion *without prejudice* for the parties to attempt to correct these errors and apparent anomalies. Alternatively, it should omit references to the Hardin Affidavit in its order on the Motion.

Blockquarry's primary concern regarding the second declaration in the Utility's Motion (and the proposed order) is its implicit statement that the Hardin Affidavit somehow correctly identifies the miners on the Premises and their purported owners. Specifically, the second

declaration identifies the personal property "left" on the Premises as, among other things, the "data servers identified in Exhibit 3 of the [Hardin Affidavit]." (*See* Motion p. 13.) If this Court declares that the miners identified in the Inventories attached to the Hardin Affidavit (Exhibit 3 or otherwise) were present on the Premises, such a declaration may subject Blockquarry and the Utility to civil liability.

Given the foregoing, Blockquarry requests the Motion be denied *without prejudice* for the parties to attempt to correct these errors and apparent anomalies. If the Court is inclined otherwise, Blockquarry requests, as alternative relief, that the Court's order omit all references to the Hardin Affidavit.

## CONCLUSION

Blockquarry requests this Court enter an order consistent with this response.

Respectfully submitted,

| | |
|---|---|
| January 12, 2024 | FOX ROTHSCHILD LLP |
| | 2 W. Washington Street<br>Suite 1100<br>Greenville, SC 29601<br>Tel:  864.751.7600 |
| Greenville, South Carolina | */s/ R. Taylor Speer* |
| | R. Taylor Speer<br>Federal ID# 12267<br>tspeer@foxrothschild.com |
| | *Attorneys for Plaintiff Blockquarry Corp. f/k/a ISW Holdings, Inc.* |
| 153428446 | |