IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | |
|---|---|
| **BEEQB LLC,**<br><br>Plaintiff,<br><br>v.<br><br>**BLOCKQUARRY CORP. f/k/a ISW HOLDINGS, INC., PANTHEON RESOURCES, INC., and HYLMEN, LLC,**<br><br>Defendant. | Case No. 7:24-cv-03179-TMC<br><br>**AMENDED COMPLAINT FOR CONVERSION, NEGLIGENCE, AND BREACH OF CONTRACT**<br><br>**Jury Trial Demanded** |

## NATURE OF ACTION

1. This action concerns an opportunistic bailee which has made off with property belonging to Plaintiff Beeqb and others.

2. Defendant Blockquarry Corp. has committed civil theft of Beeqb's property by appointing itself bailee of that property and then refusing to return it unless a series of escalating conditions or payments were met and made.

3. Acting in concert with Blockquarry Corp., Defendants Pantheon Resources, Inc., and Hylmen, LLC, have enabled that civil theft, culminating in Pantheon's demand for almost $400,000 in order to return Beeqb's own property.

4. As set forth below, Defendants should be compelled to pay damages proximately caused by its conversion.

5. Plaintiff Beeqb LLC is a company engaged in the cryptocurrency mining industry.

6. Defendant Blockquarry is a cryptocurrency mining development company that contracts for real estate, utility services, and housing for cryptocurrency mining servers.

7. Defendant Pantheon is a company which purports to secure and develop land for data processing centers related to the development of artificial intelligence.

8. Defendant Hylmen is a company that, according to its website, specializes "in a diverse portfolio of sectors, including . . . Data Center, Power Generation, Blockchain

1

Infrastructure, and Cloud Technology."

9. For the period between November 30, 2023, to July 18, 2024, Defendants had wrongful possession, custody, and control of Beeqb's cryptocurrency mining machine computers ("Miners") despite Beeqb's multiple requests to Defendant Blockquarry to return the equipment. Defendants Pantheon and Hylmen continue to have wrongful possession, custody, and control of Beeqb's specially-built crypto mining containers for the Miners ("Containers"). The Miners and Containers are collectively referred to as the "Equipment."

10. Following the initial filing of this action, Pantheon released the Miners to Beeqb on July 18, 2024.

11. Beeqb now brings this action to recover its Containers and damages associated with Defendants' conversion and use of its Equipment.

## PARTIES, JURISDICTION AND VENUE

12. Plaintiff Beeqb is a Florida limited liability company with its principal place of business located at 1830 South Ocean Drive, Hallandale Beach, Florida 33009.

13. Defendant Blockquarry is an active Nevada corporation with its principal place of business at 8300 FM 1960 West, Houston, Texas 77070. It was registered as a foreign corporation in South Carolina on February 15, 2022, under Entity ID No. 01197527, and was issued a Certificate of Authority to transact business in South Carolina. According to records of the South Carolina Secretary of State, the corporation's current status is "forfeited."

14. Defendant Pantheon is an active Delaware corporation with a principal place of business in New York, New York.

15. Defendant Hylmen is a limited liability company with its principal place of business in Missouri. The company's address is 29590 Highway U, Crocker, MO 65452.

16. This Court has subject matter jurisdiction over this case because all parties are diverse, including each plaintiff as to each defendant, and the amount in controversy exceeds $75,000.00. *See* 28 U.S.C.A. § 1332.

17. This Court has personal jurisdiction over Defendants because Defendants regularly

conduct business in South Carolina by, among other ways, contracting with entities for various performance due in the State of South Carolina.

18.  Venue is proper in this Court because a substantial part of the events or omissions giving rise to the instant claim occurred in Cherokee County, South Carolina. *See* 28 U.S.C.A. § 1391(b)(2).

## FACTS

**I.  BEEQB'S HOSTING AND PURCHASE AGREEMENTS WITH UPTIME HOSTING**

19.  Beeqb was formed in Florida in 2018 by Maxim Eliseev, its owner.

20.  Beeqb is actively involved in the cryptocurrency mining industry, which utilizes specialized and powerful Bitcoin mining machine computers. Beeqb is reliant on the sustained use of more than 1,300 of its Application-Specific Integrated Circuit Miner machines, also known as Miners. The continued operation of the Miners is critical for Beeqb's business. The Miners have an estimated combined value of at least $3,970,294.

21.  In the summer of 2021, Beeqb's representatives, including Eliseev, became aware of the Bit5ive group of companies, particularly Uptime Hosting, Uptime Armory LLC, Bit5ive LLC, and Bit5ive International LLC, and their principal, Robert Collazo.

22.  On October 1, 2021, Beeqb and Uptime Hosting entered into a Hosting Agreement, under which Beeqb and Uptime Hosting had clearly defined roles and responsibilities. A copy of the Hosting Agreement is attached as **Exhibit A**.

23.  To operate efficiently, the Miners need to be hosted in a secure facility with adequate power. Two hosting facilities were provided pursuant to the Hosting Agreement, one located at 4038 Rocket Street, Pryor, Oklahoma 74361 ("Oklahoma Facility"), and the other at 150 Hyatt Street, Gaffney, South Carolina 29341 ("Gaffney Facility").

24.  Under the terms of the Hosting Agreement, Beeqb agreed to supply the Miners and pay associated electricity and hosting fees. In return, Uptime Hosting was to provide electricity,

space, and other services for these Miners. **Exhibit A** at 15 ¶ 1.1, 18 ¶ 2.1.[1]

25.     On October 1, 2021, Beeqb and Uptime Armory also entered into a Sale and Purchase Agreement ("Purchase Agreement") under which Beeqb agreed to purchase five Containers. A copy of the Sale and Purchase Agreement is attached as **Exhibit B**. Beeqb subsequently paid Uptime Hosting $656,250 and $218,750 for the five Containers. *Id.* at 35–36, ¶¶ 2–3. These Containers were specifically built for Beeqb's Miners and Uptime Hosting's facilities. *Id.* at 51. The Containers have a combined value of at least $875,000.

26.     In accordance with the Purchase Agreement, between December 2021 and January 2023, Beeqb supplied Uptime Hosting with approximately 1,308 of its Miners and made all necessary payments, thus satisfying Beeqb's obligations under the Hosting Agreement. Beeqb shipped 456 of these Miners and five Containers to the Gaffney Facility.

27.     The Hosting Agreement explicitly notes, "the [Containers] shall remain the property of [Beeqb] at all times." **Exhibit A** at 16 ¶ 1.3. Additionally, the Hosting Agreement states, "Upon [Beeqb's] request, and provided that [Beeqb] is current on all amounts due to [Uptime Hosting], [Uptime Hosting] shall return [Beeqb's] Equipment upon termination of the Agreement." **Exhibit A** at 20 ¶ 3.7. Further, Section 2.1 states, "[Uptime Hosting] does not own any [of the Equipment]." **Exhibit A** at 24 ¶ 2.1.

28.     The section entitled "Host Representations" in the Hosting Agreement states that Uptime Hosting's performance of its obligations under the agreement would not require the consent of any third party. **Exhibit A** at 21 ¶ 5.1.

29.     While Beeqb upheld all its obligations under the Hosting and Purchase Agreements, Uptime Hosting breached the Hosting Agreement by: (1) failing to deliver the required amount of electricity to the Gaffney Facility; (2) failing to provide credits to Beeqb as a result of the breach; (3) refusing to return Beeqb's hosting deposit; and (4) refusing Beeqb's request to return Beeqb's equipment.

---

[1] The Hosting Agreement has multiple paragraphs with the same number, so references to paragraphs of the Hosting Agreement are to page number, then paragraph number.

30. Since September 12, 2023, Beeqb has had an ongoing lawsuit against Uptime Hosting, Uptime Armory, Bit5ive LLC, and Robert Collazo in the 11th Judicial Circuit of Florida. *See BEEQB, LLC v. Uptime Hosting LLC*, No. 2023-022858-CA-01 (Fla. Cir. Ct. Sept. 12, 2023). A copy of the complaint is attached as **Exhibit C**.

## II. BLOCKQUARRY UNLAWFULLY TAKES BEEQB'S EQUIPMENT AND REFUSES TO RETURN IT

31. Defendant Blockquarry was engaged in a lawsuit against the owner of the Gaffney Facility, the Gaffney Board of Public Works ("Board"), and Litchain Corp. from April 7, 2023, to April 16, 2024. *See Blockquarry Corp. v. Litchain Corp.*, No. 7:23-cv-01427 (D.S.C. Apr. 7, 2023) ("Litchain Litigation"). The dispute concerned Blockquarry's lease of the Gaffney Facility and the subsequent revocation of the lease. *Id.* A copy of the complaint is attached as **Exhibit D**. Throughout the Litchain Litigation, Blockquarry referred to itself as the "bailee" for the personal property at the Gaffney Facility which, if true, would confer upon Blockquarry the obligation to deliver the personal property to the person entitled to the property under a document of title.

32. Beeqb became aware of the Litchain Litigation and proactively sent a demand letter dated April 21, 2023, informing the Board that Beeqb was entitled to retake possession of its Equipment. A copy of this demand letter is attached as **Exhibit E**. On April 24, 2023, the Board responded and informed Beeqb that none of the equipment at the Gaffney Facility could be distributed without the court's consent. A copy of the Board's response is attached as **Exhibit F**.

33. On November 2, 2023, Blockquarry and the Board filed a joint stipulation of dismissal with prejudice of all claims and crossclaims between them. A copy of the stipulation is attached as **Exhibit G**.

34. Beeqb is a beneficiary of the settlement agreement between Blockquarry and the Board ("Settlement Agreement") because the Settlement Agreement required Blockquarry to return all property from the Gaffney Facility to its rightful owners.

35. On November 14, 2023, the Board informed Beeqb that the distribution of Beeqb's Equipment would be performed by Blockquarry. A copy of this email is attached as **Exhibit H**.

36. That same day, Beeqb sent an email to Blockquarry's counsel inquiring about plans to distribute Beeqb's Equipment and asking how Beeqb could help expedite the process. A copy of this email and subsequent exchanges with Blockquarry's counsel are attached as **Exhibit I** (the email from Beeqb's counsel is at 203–4). Blockquarry's counsel responded that all the equipment at the Gaffney Facility was being transferred to Blockquarry's new site. *Id.* at 203. However, the location of this site was not provided. Blockquarry then explained that after the equipment was transferred, Blockquarry would inventory and test the equipment and would update Beeqb after this inspection was completed. *Id.*

37. On November 16, 2023, Beeqb emailed Blockquarry's counsel and offered to reduce Blockquarry's costs by transferring Beeqb's Equipment from the Gaffney Facility as soon as possible, at Beeqb's expense. Blockquarry's counsel responded and said that it would pass Beeqb's information along to Blockquarry. *Id.* at 201–2.

38. Beeqb waited patiently for updates, but over a month passed and Blockquarry still had not provided Beeqb with a timetable, responded to Beeqb's offers for assistance, or furnished any updates regarding the return of Beeqb's Equipment. On December 20, 2023, Beeqb sent a demand letter to Blockquarry informing it that Beeqb had waited long enough, inventory should have been completed, and Blockquarry needed to return Beeqb's Equipment. A copy of this demand letter is attached as **Exhibit J**.

39. On January 12, 2024, Blockquarry filed its response to the Board's Motion for Partial Judgment in the Litchain Litigation. A copy of the response is attached as **Exhibit K**. In its response, Blockquarry stated, "It is undisputed Blockquarry was permitted to reenter the [Gaffney Site] and, on or about November 17, [2023,] it removed the [Equipment] with the authorization of the [Board]." *Id.* at 213. In the filing, Blockquarry also stated that the publicly-filed inventories of the property were incorrect. *Id*.

40. Blockquarry did not respond to Beeqb's demand letter until January 24, 2024. A copy of Blockquarry's response is attached as **Exhibit L**. In Blockquarry's reply letter, it stated that it needed additional information from Beeqb before any of Beeqb's Equipment could be

6

**AMENDED COMPLAINT**

returned.

41. On February 5, 2024, Beeqb provided Defendant Blockquarry a spreadsheet containing the number of Miners, corresponding invoices, and customs information for both the Gaffney and Oklahoma Facilities, and even photos of the Miners being unpacked. A copy of the evidence sent to Blockquarry is attached as **Exhibit M**.

42. On February 12, 2024, Beeqb and Blockquarry held a joint meeting to discuss the return of Beeqb's Equipment ("02/12/2024 Meeting"). At the meeting, Blockquarry acknowledged that Beeqb had replied swiftly to all its requests and had provided evidence regarding ownership of the Equipment. Blockquarry also stated it was satisfied the Miners belonged to Beeqb. Blockquarry asked Beeqb to provide additional information regarding Beeqb's electric consumption while the Equipment was at the Gaffney Facility. However, despite Beeqb's assurances that this information would be provided, Blockquarry refused to provide Beeqb a timetable showing when the Equipment would be released.

43. During the 02/12/2024 Meeting, Blockquarry represented to Beeqb that Bit5ive sold all of Beeqb's Containers to Blockquarry to satisfy a debt Bit5ive owed.

44. Beeqb does not owe Defendant Blockquarry any payment for outstanding debt obligations, payments, or for anything else. Beeqb has never entered into a contract with Blockquarry.

45. On February 19, 2024, Beeqb provided Blockquarry a table containing the monthly electric consumption by Beeqb in the Gaffney Facility with accompanying invoices. A copy of the cover email, table, and invoices are attached as **Exhibit N**.

46. On the same day, Beeqb received an email from Pantheon. A copy of the email, documents included with the email, and a subsequent email exchange are attached as **Exhibit O**. In the initial email, Pantheon attached documents showing it intended to take over a supposed "debt" obligation that Blockquarry alleged was owed by Beeqb. *Id.* at 265–66. The documents showed that Pantheon intended to purchase "debt that is owed to BlockQuarry from BEEQB LLC, in exchange for services rendered relating to the move of BlockQuarry's assets and equipment

from Gaffney, South Carolina to Missouri." *Id.* at 267. Pantheon suggested it might take control of Beeqb's Equipment and use it to mine bitcoin until the alleged debt was satisfied, and perhaps beyond, as part of an agreement that resembled a settlement. *Id.* at 270. Beeqb informed Pantheon that Beeqb was not interested in a settlement and might have to resort to litigation to retrieve the Equipment. *Id.* at 265. Pantheon's representative replied, "We'll be standing by to assist you. I consider mining without a hosting agreement to be in poor faith. We will evaluate our legal options as well." *Id*.

47. Pantheon worked with Hylmen regarding the movement of Beeqb's Equipment and traveled to the Gaffney site, retrieved the bitcoin mining equipment, and moved it to a location in Missouri that is owned and operated by Hylmen.

48. Pantheon and Hylmen are both operated, in part, by Shawn Vaught.

49. Shawn Vaught has an operational or ownership interest, beneficial or direct, in Hylmen. The registered agent of Hylmen is an individual named Katy Vaught.

50. According to the amended complaint in the related action *Crypto Infiniti, LLC v. Blockquarry Corp. et al.*, C/A No. 7:24-cv-04911-TMC, Hylmen and Pantheon worked together with respect to the unlawful taking and possession of mining equipment that had been located at the Gaffney site, which includes Beeqb's Equipment.

51. Pantheon's email and attachments showed that Blockquarry had held itself out to Pantheon as the owner of Beeqb's Equipment. It also shows that Pantheon intended to use Beeqb's property without authorization.

52. Hylmen is aware that Blockquarry did not own Beeqb's Equipment.

53. Hylmen is aware of Beeqb's ownership of the Equipment and has acted in total disregard of this information.

54. Hylmen did not pay for Beeqb's Equipment.

55. Hylmen does not own or have any interest in Beeqb's Equipment.

56. Beeqb does not owe Hylmen any payment for outstanding debt obligations, or for anything else. Beeqb paid substantial sums of money to fund the operations at the Gaffney Site

pursuant to its Hosting Contract, and it paid substantial sums of money to purchase the Equipment.

57. Concerned that its Equipment was being misused or improperly stored, on March 15, 2024, Beeqb emailed Blockquarry requesting permission for an agent or principal to inspect Beeqb's Miners and Containers at Blockquarry's storage facility. A copy of the email is attached as **Exhibit P**. Blockquarry's counsel never responded to this email. Beeqb emailed Blockquarry again on March 17, 2024, and received no reply. *Id.* Beeqb only learned that Blockquarry's attorneys had withdrawn on April 9, 2024, when they checked the docket for the Litchain Litigation.

58. Despite Beeqb consistently furnishing requested evidence, Blockquarry and Pantheon imposed escalating conditions on the recovery process. Instead of allowing Beeqb to retrieve its Equipment, Blockquarry wrongfully retained the Equipment at an undisclosed location and even sold it to Pantheon.

59. Defendants took the position that the Equipment did not belong to Beeqb – a plain falsehood. Despite extensive discussions in good faith and over six months passing from Beeqb's initial email to Blockquarry to the initiation of this action, Defendants committed to their theft and refused to provide a timetable for the return of Beeqb's Equipment or even disclose the Equipment's specific location.

60. The Defendants' retention of Beeqb's Equipment and refusal to return it constituted an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to Beeqb, resulting in Beeqb being deprived of its assets as a direct and proximate result of Blockquarry, Pantheon, and Hylmen's conduct.

61. Beeqb therefore decided to intervene in the Litchain Litigation to recover its Equipment. Two similarly situated entities, named Bitmain[2] and Crypto Infiniti, had already done so. Beeqb sought to join Bitmain and Crypto Infiniti (collectively, the "Intervenors") to achieve a speedy disposition of all Miners and Containers unlawfully held by Defendants.

---

[2] Bitmain is also referred to "Bitman" at certain points on the Litchain Litigation docket.

62. As Beeqb's counsel was preparing intervention papers, Blockquarry and the Board came to an agreement to settle all outstanding claims in the Litchain Litigation. The Court dismissed all pending interventions and closed the case on April 16, 2024.

63. On May 1, 2024, counsel for Blockquarry organized a "summit" for the Intervenors in the Litchain Litigation. Counsel for Blockquarry, Beeqb, Bitmain, and Crypto Infiniti attended in person or virtually. Blockquarry counsel suggested that the three Intervenors could send representatives to an unidentified facility in Missouri to inspect their equipment and tally which items belonged to each entity.

64. Blockquarry counsel is new to the case, having replaced prior counsel which was conflicted out of representing Blockquarry. A copy of Blockquarry's prior counsel's withdrawal is attached as **Exhibit Q**.

65. Blockquarry's new counsel expressed a lack of confidence that each of the Intervenors' equipment was present at the facility in Missouri. Blockquarry's counsel suggested that the Intervenors arrange a visit to the site in Missouri to determine whether the property was even fully accounted for.

66. Blockquarry's delay and negligence as a bailee cost Beeqb significant sums of money. With every day the Equipment remained under Defendants' control, Beeqb was unable to achieve the benefit of the bargain it expected when it purchased the Equipment.

67. Pantheon and Hylmen wrongfully converted Beeqb's Equipment for their own benefit, accruing significant financial gain to themselves while ignoring Beeqb's plain ownership.

68. Beeqb brought this action to force Defendants to release property they did not own.

69. Following the commencement of this action, Pantheon finally expressed its willingness to allow Beeqb to retrieve its Equipment. Pantheon identified the pickup location as 29590 Hwy U, Crocker, MO 65452 – Hylmen's address – and the site manager as Shawn Vaught.

70. Beeqb retrieved its Miners from Pantheon and Hylmen on July 17, 2024. Pantheon and Hylmen are still in possession of Beeqb's Containers.

71. Once Beeqb delivered the Miners to its own site, it conducted an inspection of them,

which revealed that Pantheon had used the Miners while they were in Pantheon's possession. Many of the Miners were also not in proper working condition.

72. Beeqb brings this action to recover damages caused by Defendants' conduct.

## COUNT I
### Negligence and Gross Negligence of Bailee: As to Defendant Blockquarry

73. In the Litchain Litigation, Blockquarry held itself out as bailee of the Equipment.

74. Beyond its allegations in parallel litigation, Blockquarry was, in fact, a bailee of the Equipment in that it received delivery of the personal property of Beeqb in trust for a specific purpose pursuant to an express or implied contract to fulfill that trust.

75. Blockquarry therefore owed a duty of care to Beeqb, the bailor of the Equipment.

76. Blockquarry has breached that duty by retaining possession of the Equipment, then putting it in the possession of Pantheon or Hylmen, long past any point of reason.

77. As a natural consequence and proximate result of Blockquarry's negligence, Beeqb has suffered foreseeable harm including loss of the Equipment itself and of the income expected from the operation of the Equipment.

78. Blockquarry's misconduct rose to the level of gross negligence and willful and wanton misconduct in allowing Pantheon or Hylmen to take possession of Beeqb's Equipment.

79. Beeqb is entitled to damages associated with Blockquarry's negligence in an amount to be determined at trial. An award of punitive damages should be assessed against Blockquarry in an amount sufficient to impress upon it the seriousness of its misconduct.

## COUNT II
### Breach of Contract: As to Defendant Blockquarry

80. On or about November 2, 2023, Blockquarry and the Board entered into the Settlement Agreement regarding claims in the Litchain Litigation.

81. The Settlement Agreement is a valid, binding contract supported by sufficient consideration among Blockquarry and the Board.

82. The Board performed in good faith its obligations under the Settlement Agreement.

83. Beeqb is a third-party beneficiary that may enforce the Settlement Agreement. The Settlement Agreement conferred a direct benefit upon Beeqb by requiring Blockquarry to return the Equipment to its rightful owners by December 19, 2023.

84. Blockquarry breached the Settlement Agreement by not returning the Equipment to Beeqb.

85. As a direct and proximate result of Blockquarry's breach, Beeqb has been injured and is entitled to any such relief the Court deems just and appropriate.

## COUNT III
### Conversion: As to All Defendants

86. Blockquarry deprived Beeqb of its right to use its own property.

87. To the extent Blockquarry's services as bailee in South Carolina were necessary, such need lapsed when Blockquarry and the Board entered into the Settlement Agreement.

88. Blockquarry should have returned the Equipment to Beeqb immediately.

89. By instead taking or shipping Beeqb's Equipment to Missouri, Blockquarry improperly took property from Beeqb without due authority.

90. Pantheon and Hylmen conspired with Blockquarry to achieve this result.

91. Blockquarry's retention of the Equipment and Pantheon and Hylmen's refusal to return it constitute an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to Beeqb, to the alteration of the condition or the exclusion of Beeqb's rights.

92. Defendants' acts of conversion were willful, reckless, and committed with conscious indifference to the rights of Beeqb.

93. As a result of Defendants' conversion, Beeqb has suffered damages in an amount to be determined at trial. An award of punitive damages should also be assessed against Defendants to impress upon them the seriousness of their misconduct.

## COUNT IV
### Restitution for Unjust Enrichment: As to All Defendants

94. Defendants do not own Beeqb's Equipment.

95. Defendants have used Beeqb's Equipment to mine bitcoin.

96. By unlawfully taking control of and using Beeqb's Equipment, Defendants have realized a benefit from Beeqb's property.

97. Defendants have realized significant value from that benefit.

98. It would be inequitable for Defendants to retain that benefit without paying Beeqb for the benefit's value.

99. Beeqb is therefore entitled to restitution of that benefit. Otherwise, Defendants will have been unjustly enriched.

**WHEREFORE,** Plaintiff Beeqb demands: (1) an Order for the immediate delivery of its Containers; (2) an Order prohibiting Defendants from concealing, damaging, or destroying the Containers (including any future sale of the Containers); (3) an Order awarding Beeqb permanent possession of the Containers; (4) an Order awarding reasonable attorney's fees to Beeqb; (5) actual damages and punitive damages associated with Defendants' negligence, conversion, and breach, in an amount to be determined at trial; and (6) any further relief that the Court deems just and equitable.

Date: November 13, 2024

**CHAPPELL, CHAPPELL & NEWMAN**

By: */s/ Graham L. Newman*
Graham L. Newman, Federal Bar No. 9746
4500 Fort Jackson Blvd., Suite 250
Columbia, South Carolina 29209
Tel: (803) 266-1553
graham@chappell.law

**BUZKO KRASNOV**
Evgeny Krasnov
evgeny.krasnov@buzko.legal
Tel: (718) 557-9582
228 Park Avenue South

PMB 85451
New York, New York 10003
*Pro Hac Vice Motion forthcoming*

*Attorneys for Plaintiff Beeqb LLC*

**AMENDED COMPLAINT**